| Good will account: | Debit. | Credit. |
|---|---|---|
| Surplus | $5,603.17 | $5,603.17 |

The above entry is made to correct entry made in March, 1910. Proper amount allowed for the good will was $63,725.70, not $58,122.53, as made by Mr. Royal.

Under the agreement hereinbefore referred to, Mrs. Chisholm, the widow, was to get 465½ shares of the 2,000 shares of the capital stock of the William Chisholm's Sons Co., and a contract was entered into between Mrs. Chisholm and H. A. Chisholm by which she was granted an option to require H. A. Chisholm to purchase her stock at any time within three months at 92.8 per cent of its face value. In the event Mrs. Chisholm did not exercise said option within said three months, she obligated herself not to sell to anyone except H. A. Chisholm, and, in the event she decided to sell after said three months, he was to purchase it at 68 per cent of its face value.

C. S. Chisholm also agreed to sell to H. A. Chisholm, and H. A. Chisholm agreed to buy, the 431 shares of stock allotted to said C. S. Chisholm at 92.8 per cent of their face value.

Immediately after the organization of the corporation, H. A. Chisholm sold to A. E. Cook, who was secretary of the company, 100 shares of said stock for $96 per share.

Good will had a value of at least $43,700.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*

---

### Appeal of COGHLIN ELECTRIC CO.

Docket No. 1879.   Submitted April 21, 1925.   Decided March 31, 1926.

1. One of taxpayer's department sales managers, whose compensation was based in part upon a percentage of the net profits of his department, left the service of the taxpayer in August, 1916, with his account unadjusted. On or before December 31, 1916, taxpayer computed and accrued on its books of account for said year the amount owing to said salesman. The salesman, upon being advised of the adjustment in 1917, disputed the computation. This resulted in negotiations under which a new basis for computing the profits of the department was agreed upon and additional compensation for the salesman which was accrued upon the books of the company for the close of the year 1917. *Held*, the amount accrued in 1917 was an allowable deduction for that year.

2. A corporate taxpayer which for many years had consistently kept its accounts and closed its books on the basis of fiscal years ending February 28, but which had prior to 1918 made income-tax returns on the basis of calendar years, was compelled by the Reve-

nue Act of 1918 to change the basis upon which its returns must be thereafter made to its fiscal year and to make a separate income-tax return for the two months of January and February, 1918, is entitled to have its tax liability for that two-month period determined on the basis of an independent return for such period. *Appeal of Henry D. Weed*, 2 B. T. A. 84.

*Merrill S. June, Esq.*, for the taxpayer.
*Laurence Graves, Esq.*, for the Commissioner.

Before JAMES, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits tax for the calendar year 1917 in the amount of $940.11; for the two-month period ended February 28, 1918, $632.28; and for the fiscal year ended February 28, 1921, $150, totaling $1,722.39. At the hearing the taxpayer waived allegations of error respecting the fiscal year ended February 28, 1921, and all errors respecting adjustments of taxable income, except as to the disallowance of an item of certain commissions claimed as a deduction for the calendar year 1917 in the amount of $1,518.46. The only other issue presented for consideration involves the method of computing the tax liability for the two-month period ended February 28, 1918.

FINDINGS OF FACT.

1. The taxpayer is a corporation having its principal place of business at Worcester, Mass., and having an authorized and paid-in capital of $10,000. The taxpayer has for many years consistently kept and closed its books of account upon an accrual basis and for fiscal years ended February 28. Prior to 1918 it made its income and profits-tax returns, as required by the taxing authorities, for the calendar year periods. For the two months of January and February, 1918, it made a separate return, and thereafter it made returns on the basis of its regularly established fiscal periods.

2. The taxpayer did a large retail and wholesale jobbing business. It also engaged in contracting, electric construction, and repair work, including residences, factories, and large office buildings. The business extended throughout the New England States and occasionally into New York and New Jersey. For 1917 the gross sales amounted to $307,832.89. To facilitate and stimulate the business the work of the corporation was departmentalized, with the head of each department engaged on the basis of salary and commission. At the head of one of these departments one Peter A. Coghlin, a brother of the president of the taxpayer, was employed. He occupied this position for a number of years, ceasing his employment in August, 1916, at which time he went into business for himself. He was paid a salary and a percentage of the profits of his department. His

employment ceased in August, 1916. On December 30, 1916, the taxpayer entered upon its books an adjustment of Peter A. Coghlin's account, showing a balance due to him of $959.64. This closed Peter A. Coghlin's account, and in January, 1917, he was given a check for the amount above stated. Later Coghlin was not satisfied with this adjustment, claiming there had not been a proper apportionment of charges against his department.

As a result of this situation, in the year 1917, the controversy was compromised and adjusted, and the taxpayer, in order to arrive at a final settlement, agreed to pay to Peter A. Coghlin the additional amount of $1,518.46, and this amount was entered upon the books of the taxpayer as a liability on December 30, 1917. The Commissioner disallowed this item as an expense for the calendar year 1917.

3. The taypayer's paid-in capital and undivided profits were inadequate for the volume of business transacted. It financed its extensive business through the personal credit of J. P. Coghlin, who was president of the corporation. Most of the purchases of supplies and materials were obtained from the American Steel & Iron Co. and the Westinghouse Electric Manufacturing Co., its two largest creditors. At times the account with the American Steel & Iron Co. was around $50,000, and the Westinghouse account was somewhat less, but it was necessary for Coghlin personally to guarantee these accounts. He was also required personally to indorse paper for loans at the banks. He received no compensation for these guarantees of credit or for his indorsement upon bank loans. He also kept with the taxpayer a comparatively large credit balance, which was used in the taxpayer's business. The adjusted balance sheets for the periods from December 31, 1916, to February 28, 1918, showed liabilities as follows:

| Liabilities. | Dec. 31, 1916. | Feb. 28, 1917. | Dec. 31, 1917. | Feb. 28, 1918. |
|---|---|---|---|---|
| Notes payable | $40,010.57 | $27,260.57 | $30,554.56 | $33,478.73 |
| Trade accounts | 23,779.57 | 16,005.69 | 26,885.27 | 12,322.63 |
| Miscellaneous accounts | 2,899.02 | 2,533.86 | 4,452.23 | 4,408.49 |
| J. P. Coghlin accounts | 52,511.51 | 67,191.33 | 65,463.76 | 69,712.31 |
| Reserve for depreciation | 9,878.14 | 9,992.86 | 11,032.35 | 10,207.79 |
| Capital, surplus, and capital reserves | 23,944.42 | 15,074.37 | 20,452.17 | 20,396.52 |
| Total liabilities | 153,023.23 | 138,058.68 | 158,840.34 | 150,526.47 |

4. The Commissioner computed the excess-profits tax for the calendar year 1917 under the provisions of section 210 of the Revenue Act of 1917.

For the two-month period of January and February, 1918, the Commissioner computed the tax liability upon the basis of the ad-

justed taxable income for the twelve-month period from March 1, 1917, to February 28, 1918; applied thereto the tax rates of the Revenue Act of 1918, and found the tax liability for the two months by taking one-sixth of the total computation of tax as so found.

OPINION.

TRUSSELL: Peter Coghlin, some time prior to 1916, had been a department sales manager employed in the taxpayer's business. He had had an understanding that his compensation should consist in part of the percentage of the net profits of the sales of the department over which he had presided. When, in 1917, he was advised of the adjustment made by the taxpayer, he complained that it was unfair to him, and, as a result of such complaint, he and the taxpayer arrived at and agreed upon a new basis for computing the profits of the department upon which he was entitled to a percentage, which resulted in the taxpayer's then agreeing to pay to him additional compensation in the amount of $1,518.46. This amount was arrived at on a basis of accounting agreed upon in 1917; it was accrued upon the books of the taxpayer in that year; and it was in effect a compromise adjustment made in the year 1917, and as such is a proper deduction from gross income for that year.

Sections 239 and 226 of the Revenue Act of 1918 provide that, when a corporation finds it necessary to make an income-tax return for a fraction of a year, "a separate return shall be made for the period between the close of the last calendar year for which return was made and the date designated as the close of the fiscal year."

The Board has held in the *Appeal of Henry D. Weed*, 2 B. T. A. 84, that this provision meant a separate return for such fractional portion of a year entirely unrelated to any prior or future tax return. The reasoning in that opinion applies with equal force in the case of a corporation. We are, therefore, of the opinion that in the instant case the taxpayer should make income and profits-tax return reporting the items of gross income for the months of January and February, 1918, and the items of deduction for the same time; that the specific credit allowed by section 236 (c) should be adjusted to two-twelfths of $2,000; and that the invested capital for the period should be computed in accordance with section 326 (d).

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*